IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| C.R. BARD, INC., a New Jersey corporation, and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ANGIODYNAMICS, INC., a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S RENEWED MOTION TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**<br><br>2:12-cv-00035-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, Bard)[1] develop and manufacture medical devices. Bard filed suit claiming that Defendant AngioDynamics, Inc. infringed on three of Bard's patents. AngioDynamics denies the allegations. Before the court is AngioDynamics's Renewed Motion to Dismiss or Transfer for Improper Venue.[2] For the reasons explained below, the Motion is GRANTED, and the case is TRANSFERRED to the District of Delaware.

---

[1] On July 12, 2017, C.R. Bard assigned the patents at issue in this case to Bard Peripheral Vascular, including all causes of action for past, present, and future infringement claims. *See* Dkt. 111 (Motion to Substitute a Party) at 2. C.R. Bard then moved the court to substitute Bard Peripheral Vascular as the named Plaintiff in this case. *Id.* The court denied the Motion and instead ordered joinder of C.R. Bard and Bard Peripheral Vascular. *See* Dkt. 132 (Order Denying Substitution).

[2] Dkt. 163.

## BACKGROUND

Bard commenced this action on January 11, 2012, alleging AngioDynamics infringed three of Bard's patents related to its power injectable port technology.[3] Bard concurrently filed in this court two other actions involving the same patents against Medical Components, Inc. and Smiths Medical ASD.[4] While this case was in initial proceedings, AngioDynamics filed with the United States Patent & Trademark Office (USPTO) a petition for *inter partes* reexamination.[5] After the USPTO granted the petition for review, AngioDynamics successfully moved to stay this case.[6] On December 17, 2012, the case was administratively closed.[7] Upon completion of the USPTO's *inter partes* reexamination proceedings, the court on October 4, 2019 lifted the stay and reopened the case.[8]

While the case was stayed, the Supreme Court decided *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, holding that for venue purposes a corporate defendant in a patent infringement action resides only in its state of incorporation.[9] That holding significantly changed existing law.[10] Shortly after this case was reopened, AngioDynamics moved to dismiss or transfer under the new rule announced in *TC Heartland*.[11] AngioDynamics argued in its motion that venue is improper in the District of Utah because AngioDynamics is incorporated, and therefore resides,

---

[3] Dkt. 2 (Complaint) at 2–5 (U.S. Patent No. 7,947,022; U.S. Patent No. 7,785,302; and U.S. Patent No. 7,959,615).

[4] *See* cases 2:12-cv-32 and 2:12-cv-36, respectively.

[5] *See* Dkt. 151 (Motion to Dismiss) at 2.

[6] *See* Dkt. 82 (Motion to Stay); Dkt. 88 (Order granting stay).

[7] *See* Dkt. 89.

[8] *See* Dkt. 147.

[9] 137 S. Ct. 1514, 1517 (2017).

[10] *See In re Micron Technology, Inc.*, 875 F.3d 1091, 1094 (Fed. Cir. 2017).

[11] *See* Dkt 151.

in Delaware, and it does not have a regular and established place of business in Utah.[12] Challenging that assertion, Bard filed a motion for venue discovery,[13] which the court granted.[14]

Following venue discovery, AngioDynamics filed a Renewed Motion to Dismiss or Transfer for Improper Venue, which is now before the court.[15] Bard opposes the Motion, arguing venue is proper in the District of Utah because: (1) AngioDynamics waived its ability to challenge venue in 2012 when it affirmatively stated in its Answer that venue here was proper and then filed counterclaims against Bard; (2) AngioDynamics forfeited its ability to challenge waiver based on its post-*TC Heartland* conduct; and (3) if venue is determined based on post-filing activity, the presence of Utah-based AngioDynamics sales representatives beginning in 2016 establishes that AngioDynamics has a regular and established place of business in Utah.[16] As explained below, these arguments are unavailing. Finding venue in the District of Utah lacking, the court transfers the case to the District of Delaware.

## DISCUSSION

"Upon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue."[17] Venue is established under 28 U.S.C. § 1400(b), which provides: "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." The Supreme Court recently held in *TC Heartland*

---

[12] *Id.* at 1.

[13] Dkt. 152 at 6.

[14] Dkt. 158 (Order granting venue discovery).

[15] Dkt. 163.

[16] *See* Dkt. 172 (Opposition Memo.) at 1; Dkt. 193 (Surreply) at 1.

[17] *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

that in the context of a patent infringement action, a corporate defendant resides only in its state of incorporation.[18]

AngioDynamics asserts venue is no longer proper in the District of Utah under *TC Heartland* because it is incorporated, and thus resides, in Delaware. For that reason, AngioDynamics maintains venue here is proper only if it has committed acts of infringement in Utah and has "a regular and established place of business" in the District.[19] AngioDynamics denies it has such a place of business.[20]

Bard argues venue is proper in the District of Utah under the three separate legal theories described above: (1) waiver, (2) forfeiture, and (3) timing. The court addresses each theory in turn.

## I. AngioDynamics Did Not Waive Its Right to Challenge Venue

Bard first argues AngioDynamics waived its right to challenge venue because it admitted in its Answer to the 2012 Complaint that venue here was appropriate, and because it sought affirmative relief here when it chose to assert counterclaims against Bard. The court disagrees.

### A. Legal Standard

Patent venue law has changed substantially over the past fifty years, with numerous courts evaluating the relationship between the patent venue statute, § 1400(b), and the general

---

[18] 137 S.Ct. at 1517.

[19] 28 U.S.C. § 1400(b) (2018).

[20] Whether AngioDynamics committed acts of infringement "is a factual question not appropriate for resolution on a motion to dismiss for improper venue." *Zaxcom, Inc. v. Lectrosonics, Inc.*, 2019 WL 418860 at *4 (E.D.N.Y. Feb. 1, 2019) (unpublished) (citing *Medicines Co. v. Hospira, Inc.*, 881 F.3d 1347, 1350 (Fed. Cir. 2018) ("Infringement is a question of fact.")); *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) (The "issue of infringement" is "a question to be determined at trial" and "is not reached on the merits in considering venue requirements."). AngioDynamics does not for purposes of its motion contest Bard's allegations that it committed infringing acts in this District.

venue statute, 28 U.S.C. § 1391(c).[21] In 1957, the Supreme Court held the then-existing version of § 1391(c) did not apply to § 1400(b), meaning that patent venue was separate and distinct from general venue requirements.[22] Following the 1988 Congressional amendments to § 1391(c), the Federal Circuit concluded in *V.E. Holding Corp. v. Johnson Gas Appliance Co.*[23] that the new § 1391 amendments "furnished a definition of 'resides' that applied to § 1400(b)."[24] Under the new amendments, a corporate defendant was "deemed to reside in any judicial district in which it [wa]s subject to personal jurisdiction at the time the action [wa]s commenced."[25] Crucially, the court in *V.E. Holding* broadly expanded patent venue jurisdiction by linking it with the general venue statute.

Because the Federal Circuit retains nationwide original jurisdiction in patent cases,[26] the *V.E. Holding* decision set binding precedent for all federal district courts across the country and remained good law for nearly thirty years.[27] On May 22, 2017, "the Supreme Court changed the

---

[21] Section 1391(c)(2), as most recently amended in 2011, states, "[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction . . . ."

[22] *See Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 229 (1957).

[23] 917 F.2d 1574, 1575 (Fed. Cir. 1990).

[24] *In re Micron Technology, Inc.*, 875 F.3d 1091, 1098 (Fed. Cir. 2017).

[25] *Id.* at 1098–99 (internal quotation marks and citations omitted).

[26] *See* 28 U.S.C. § 1295(a)(1) (2018) ("The United State Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents.")

[27] Federal Circuit law governs on all matters of substantive patent law, while regional circuit law governs procedural issues. Although venue is a procedural issue, the Federal Circuit explains, "[A] procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive control by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." *Laboratory Corp. of America Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004) (citation omitted). Therefore, "the interpretation of § 1400(b), a patent-specific statute, including its relation to § 1391, is a matter of Federal Circuit law, not regional circuit law (subject, of course, to Supreme Court law)." *In re Oath Holdings Inc.*, 908 F.3d 1301, 1305 (Fed. Cir. 2018).

controlling law when it decided *TC Heartland*."[28] The Court concluded "the [1988 and 2011[29]] amendments to § 1391 did not modify the meaning of § 1400(b)" as interpreted by the Court's earlier case law.[30] In contrast to § 1391's default definition, the term "resides" as applied to patent venue in § 1400(b) "refers only to the State of incorporation" of corporate defendants.[31] This change, which severed § 1400(b) from § 1391(c), made available an objection to venue based on lack of residence for defendants nationwide who were currently involved in pending patent disputes.[32]

Despite this change of law, many district courts initially concluded that individual defendants had waived their right to challenge venue under Federal Rule of Civil Procedure 12(h)(1) and Rule 12(g)(2) where they previously omitted a venue defense from their answers or initial motions to dismiss.[33] The Federal Circuit definitively rejected that approach when it decided *In re Micron*, explaining, "The venue objection was not available until the Supreme Court decided *TC Heartland* because, before then, it would have been improper, given controlling precedent, for the district court to dismiss or to transfer for lack of venue."[34] In a follow-up case, *In re Oath Holdings*, the Court again clarified that "issues of waiver or forfeiture of patent-venue rights under § 1400(b)" are governed by Federal Circuit law and that "*Micron*

---

[28] *In re Micron*, 875 F.3d at 1099.

[29] Congress again amended § 1391 in 2011. The Federal Circuit reasoned the 2011 amendments provided no basis to reconsider its prior decision and reaffirmed *V.E. Holding*. *See In re TC Heartland LLC*, 821 F.3d 1338, 1343 (Fed. Cir. 2016), *rev'd and remanded sub nom. TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) ("We reject Heartland's argument that in 2011 Congress codified the common law regarding venue in patent suits as described in *Fourco*.").

[30] *TC Heartland*, 137 S. Ct. at 1517.

[31] *Id.* at 1521.

[32] *See In re Micron*, 875 F.3d at 1099.

[33] *Id.* at 1093–94.

[34] *Id.* at 1096.

answers the entire question of waiver under Rule 12(g)(2) and (h)(1) . . . there [is] no such waiver."[35]

### B. Analysis

Bard nevertheless claims AngioDynamics waived its right to challenge venue for two reasons: (1) AngioDynamics expressly admitted venue existed in the District of Utah in its Answer to the 2012 Complaint, and (2) AngioDynamics submitted to the jurisdiction of the court by filing five counterclaims against Bard.[36] The Court finds both arguments unpersuasive.

#### 1. AngioDynamics's 2012 Admission Does Not Amount to Waiver

"Under longstanding precedent, it was understood when defendants answered the complaints filed . . . that venue was proper in a patent infringement case against a corporation in any district in which the corporation was subject to personal jurisdiction."[37] It is undisputed that when the case against AngioDynamics was filed in 2012, venue here was proper based on then-controlling precedent. Consequently, AngioDynamics admitted in its Answer, "[V]enue may exist in this district under 28 U.S.C. §§ 1391 and 1400."[38]

As previously explained, a venue objection based on AngioDynamics's circumstances pre-*TC Heartland* was not available when the case was filed, and it is well established that a defendant is not required to engage in futile gestures solely to avoid a claim of waiver.[39] As is the case here, "a sufficiently sharp change of law sometimes is a ground for permitting a party to

---

[35] 908 F.3d at 1305.

[36] *See* Dkt. 172 (Opposition Memo.) at 7–8.

[37] *Xodus Medical Inc. v. Prime Medical LLC*, 2018 WL 4385243, at *2 (W.D. Pa. Sept 14, 2018) (unpublished).

[38] Dkt. 70 at 2, ¶ 4.

[39] *See In re Micron*, 875 F.3d at 1098 (collecting cases showing all circuits agree with this position). The Tenth Circuit explicitly stated there is no requirement that a defendant "make a futile attempt . . . given the state of the law," and the court will apply a new decision to a pending case when "the decision establishes a new principle of law . . . by overruling clear past precedent upon which the litigants may have relied." *Peterson v. Shearson/American Exp., Inc.*, 849 F.2d 464, 466 (10th Cir. 1988).

advance a position that it did not advance earlier in the proceeding when the law at the time was strongly enough against that position."[40]

Bard insists the specific language of AngioDynamics's admission distinguishes this patent case from others pending at the time *TC Heartland* was decided.[41] Unlike AngioDynamics, the defendants in those cases did not explicitly admit venue was proper.[42] But that is a distinction without a difference. Venue here was proper under existing law when this case was filed, and it would have been inconsistent with at least the spirit of the Rules for AngioDynamics to maintain otherwise when the defense was clearly unavailable.

The Federal Circuit addressed the same question in *In re Oath Holdings*. The defendant there admitted to venue in its answer, and the court explained that a litigant "cannot be faulted for waiting to present a venue objection until after *TC Heartland* was decided, where the case was in an early stage, [and] the defense could not properly have been adopted by the district court at the time[]."[43] This was true even when the defendant there was aware that *TC Heartland* was pending and could result in a favorable change of law. AngioDynamics did not waive its right to challenge venue post-*TC Heartland* merely because it admitted in its 2012 Answer that venue was proper at that time.

    2.  <u>AngioDynamics's 2012 Counterclaims Do Not Amount to Waiver</u>

"[F]iling a counterclaim, compulsory or permissive, cannot waive" Rule 12 defenses, particularly when the moving party has not been "extensively participating in the litigation"

---

[40] *In re Micron*, 875 F.3d at 1097.

[41] Dkt. 193 (Surreply) at 3.

[42] *See, e.g.*, *In re Micron*, 875 F.3d 1091; *Genesis Attachments LLC v. Detroit Edge Tool Co.*, 2019 WL 1924302 (W.D. Wis. Apr. 30, 2019); *Xodus Med.* 2018 WL 4385243.

[43] 908 F.3d at 1306.

before seeking timely dismissal of the case.[44] Further, "the Federal Circuit has suggested that the [waiver] inquiry should at least start with an examination of the 'time from when the defense becomes available to when it is asserted.'"[45]

Considering that a venue defense was unavailable when the case was filed, it was entirely appropriate that AngioDynamics answered the Complaint and asserted counterclaims seeking affirmative relief, especially if those counterclaims were compulsory.[46] Unlike jurisdictional defenses subject to waiver, seeking affirmative relief by asserting counterclaims will not ordinarily implicate waiver of venue defenses—at least not here, where AngioDynamics had no way of knowing patent venue law would change significantly years later while its case was administratively closed. To find otherwise would place many parties in the untenable position of having to blindly weigh at the outset of litigation the potential value of claims that may be lost if not asserted against the risk that asserting those claims could result in waiver of new defenses that may later become available only as a result of unforeseen changes in the law. Such an approach would impede, rather than promote, the orderly and efficient resolution of disputes.

Nevertheless, specific circumstances in individual cases may compel different results. As the appellate courts have counseled, this is particularly so where a new defense becomes available late in litigation. But notwithstanding the filing date, this case remains today in its infancy as a result of a nearly seven year stay during which the parties were engaged in

---

[44] *Rates Technology Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1308–09 (Fed. Cir. 2005); *see also Campbell v. Bartlett*, 975 F.2d 1569, 1574 (10th Cir. 1992) ("We follow the rule that by filing a compulsory counterclaim a party does not waive Rule 12(b) objections.").

[45] *Intellectual Ventures II LLC v. FedEx Corporation*, 2017 WL 5630023 at *3 (E.D. Texas, Nov. 22, 2017) (quoting *In re Micron*, 875 F.3d 1091, 1102 (Fed. Cir. 2017)). The *Intellectual Ventures* court refers to this as a "forfeiture" inquiry, but Bard frames the issue as one sounding in waiver. The two terms can be used interchangeably when considering whether a party's counterclaims defeat a subsequent improper venue motion.

[46] Dkt. 70.

proceedings relating to review of the relevant patents. Importantly, none of AngioDynamics's counterclaims have been actively litigated.

In light of these facts, the court declines to find waiver of its new venue defense based on AngioDynamics's filing of counterclaims.[47]

## II. AngioDynamics Did Not Forfeit the Right to Challenge Venue Based on Its Post-*TC Heartland* Conduct

Bard next argues AngioDynamics forfeited its right to challenge venue because it waited more than two years after *TC Heartland* was decided to notify Bard it intended to challenge venue. Again, the court disagrees.

### A. Legal Standard

"Rule 12(h)(1) waiver is not the sole basis on which a district court might, in various circumstances, rule that a defendant can no longer present a venue defense that might have succeeded on the merits."[48] Even when Rule 12-based objections to venue do not apply, the Federal Circuit has made clear that "district courts have the authority to find forfeiture of a venue objection" based on a party's conduct.[49] Although the court declined to provide "[a]ny legal conclusions about the boundaries of discretion" or how such discretion is to be utilized by the district courts,[50] it did identify the following non-exhaustive list of factors as at least a starting point for evaluating a claim of forfeiture: (1) the time from when the venue defense became

---

[47] Other courts have reached a similar conclusion. *See, e.g., H.W.J. Designs for Agribusiness, Inc. v. Rethceif Enterprises*, LLC, 2018 WL 827768, at *4 (E.D. Cal. Feb. 12, 2018) (finding assertion of counterclaim did not waive venue challenge in patent case); *Rillito River Solar LLC v. Wencon Dev. Inc.*, 2017 WL 5598228, at *4 (D. Ariz. Nov. 21, 2017) (same); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1397 (3d ed. 2004) ("The trend in more recent cases is to hold that no Rule 12(b) defense is waived by the assertion of a counterclaim, whether permissive or compulsory.").

[48] *In re Micron*, 875 F.3d at 1100.

[49] *Id.* at 1101.

[50] *Id.* at 1102.

10

available to when it was asserted, (2) nearness of trial, and (3) whether a party has used a "tactical wait-and-see" approach to bypass an opportunity to declare a desire for a different forum.[51] None of these factors support a finding that AngioDynamics has forfeited its right to raise a venue defense.

### B. Analysis

1. Timeliness

The Supreme Court decided *TC Heartland* on May 22, 2017. This case was reopened on October 4, 2019,[52] and AngioDynamics moved on November 25, 2019 to dismiss or transfer the case based on improper venue.[53] Bard contends that, rather than wait until the *inter partes* review was complete, AngioDynamics was required to jointly move with Bard to lift the stay in this case immediately after the *TC Heartland* decision to permit AngioDynamics to challenge venue.[54] Because AngioDynamics waited more than two years before notifying Bard that venue was improper, Bard argues AngioDynamics forfeited its right to challenge venue.[55]

This is one of many patent cases that were stayed when *TC Heartland* was decided. Other district courts considering the issue generally conclude that the timeliness of *TC Heartland* venue motions is most properly evaluated from the date a stay is lifted. This court adopts the rationale generally articulated in those cases and will employ the same approach here.[56] Among

---

[51] *Id.* at 1101–02.

[52] Dkt. 147.

[53] Dkt. 151.

[54] Dkt. 193 at 4.

[55] *Id.*

[56] *See Genesis Attachments LLC v. Detroit Edge Tool Co.*, 2019 WL 1924302 at *3 (W.D. Wis. Apr. 30, 2019) ("[D]efendant cannot be faulted for not pressing the issue until the stay was lifted . . . The defense only became available in January 2019 when the case was reopened."); *Infinity Computer Products, Inc. v. OKI Data Americas, Inc.*, 2018 WL 1035793 at *5 (E.D. Penn. Feb. 23, 2018) (unpublished) ("It was not until August 8, 2017, the stay was lifted. Thus, the August 8, 2017 date will be considered as the operative date to evaluate Moving Defendants' conduct and the waiver arguments."); *Xodus Medical Inc. v. Prime Medical LLC*, 2018 WL 4385243 at *4 (W.D.

other things, this approach avoids compelling potentially unnecessary or futile motions in stayed cases before issues are ripe for consideration.

Reopening this case in 2017 solely to hear a motion for improper venue would have required the expenditure of resources both for the parties and the court on matters that may later have become moot depending on the outcome of the ongoing USPTO proceedings. The review process could easily have resolved the matter, the parties might have settled the case in the intervening two years after *TC Heartland*, or any number of other things might have happened, rendering the venue issue moot before this case was eventually reopened in 2019. In any event, even had the court decided the venue issue and ordered the case transferred in 2017 or 2018, the parties presumably would have merely filed a new request to stay in the transferee district court because the case still could not proceed until the *inter partes* review was complete.[57]

This case was reopened on October 4, 2019. AngioDynamics moved less than two months later to dismiss or transfer for improper venue. The motion was timely and resulted in no prejudice to Bard. AngioDynamics did not forfeit its right to challenge venue.

2. Nearness of Trial

This case remains in its infancy due to the nearly seven-year stay in effect from December 2012 to October 2019.[58] There has been little meaningful litigation since the case was

---

Penn. Sept. 14, 2018) (unpublished) ("Because *TC Heartland* was decided during the pendency of a stay . . . the 'accrual' date for considering whether defendants' conduct waived their right to dispute venue in those cases is the date that the stay was lifted.").

[57] *See Silcotek Corporation v. Entech Instruments, Inc.*, 2018 WL 1818192 at *3 (W.D. Penn., Apr. 17, 2018) (unpublished) (The court confronted a similar situation and explained, "That exercise would be pointless in a stayed matter that could be resolved in the other proceedings . . . and would contradict the spirit of Federal Rule of Civil Procedure 1 because it would waste judicial resources.").

[58] The length of the stay is reflected in the complex procedural history of this case. During the *inter partes* reexamination of the patents at issue, the USPTO initially invalidated the challenged patents. Bard appealed the decision to the Federal Circuit, which found in 2018 that the USPTO's claim construction was "unreasonably broad" and vacated and remanded the case. On remand, the USPTO upheld the three challenged patents. *See* Dkt. 152 (Bard's Opposition to AngioDynamics's Initial Motion to Dismiss or Transfer for Improper Venue) at 3.

reopened and trial is likely years away. Neither side will suffer prejudice if the case is transferred to another jurisdiction.

### 3. Bypassed Opportunities

There is no evidence AngioDynamics engaged in any "wait-and-see" tactics or bypassed an opportunity to challenge venue. The USPTO completed its *inter partes* review on August 26, 2019.[59] AngioDynamics discussed the venue defect with Bard during two separate meetings in August 2019.[60] In its Motion to Reopen the case filed September 3, 2019, AngioDynamics stated its intent to file a *TC Heartland* motion once the case was reopened.[61] AngioDynamics raised its venue defense at the earliest opportunity and did not engage in apparent gamesmanship.

In sum, none of the traditional factors identified by the Federal Circuit support a finding that AngioDynamics forfeited its right to challenge venue, and the court is aware of no other considerations that compel such a finding.

## III. Venue Should Be Analyzed Based on the Facts at the Time of Filing

In its initial Complaint, Bard claimed venue here was proper because AngioDynamics infringed on Bard's patents by selling the infringing products in Utah.[62] Under binding precedent in effect at the time of filing, this would have been enough to establish venue under § 1400(b).[63]

---

[59] *See* Dkt. 141 (Motion to Reopen Case) at 3.

[60] *Id.* AngioDynamics raised the venue defect with Bard during "meet-and-confers" held on August 13, 2019 and August 30, 2019.

[61] *Id.*

[62] *See* Dkt. 2 at 3 ¶ 11; 4 ¶ 15; 4 ¶ 18.

[63] *See* discussion *supra* Section I.A.

Following *TC Heartland*, Bard must meet the more stringent requirements of the second prong of § 1400(b) and show that AngioDynamics has a "regular and established" place of business in this district. When this case was initially filed in January 2012, AngioDynamics did not operate any facilities in Utah, nor did it employ any Utah-based sales representatives.[64] As Bard implicitly concedes, it can carry its burden only relying on AngioDynamics's more recent, post-filing business activity in the state. Beginning in 2016, AngioDynamics employed, at different times, two Utah-based territory managers responsible for selling the company's products in the Las Vegas multi-state territory, which includes Utah.[65] Bard argues the court should consider this activity when evaluating whether venue is proper.

The relevance of post-filing forum business activity to patent venue is an unresolved issue. The court is aware of no Federal Circuit decisions providing guidance concerning the point in time when venue is to be analyzed under § 1400(b). In the absence of binding precedent, two approaches have emerged among the several district courts addressing the issue. One group of cases[66] holds "that venue should be determined based on the facts existing at the

---

[64] *See* Dkt. 163 at 6.

[65] Dkt. 163 at 9, 11. Steven Francis was hired on July 31, 2017 as a territory manager and continues to work for AngioDynamics in that capacity. Francis's sales territory covers eight Mountain West states, including Utah. Daniel McIff was hired as a territory manager on October 31, 2016, and he worked for AngioDynamics until April 14, 2017. His territory also included Utah.

[66] *See, e.g.*, *Personal Audio, LLC v. Google, Inc.*, 280 F. Supp.3d 922, 930–31 (E.D. Tex. Dec. 1, 2017) ("'Bringing' a civil action refers to the act of filing a complaint. The term 'resides' is in the present tense. The phrase 'the defendant has committed acts' applies to past acts. But the phrase 'where the defendant has a regular and established place of business' is in the present tense . . . [a]pplying strict statutory construction, venue under § 1400(b) should be analyzed based on the facts and circumstances that exist on the date the suit is filed."); *NetSoc, LLC v. Chegg Inc.*, 2019 WL 4857340 at *2 (S.D.N.Y. Oct. 2, 2019) (Noting that "bringing" a civil action refers to the act of filing a complaint, and analyzing venue at that time comports with the Federal Circuit's reminder that venue determinations "must be closely tied to the language of the statue." (citing *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017)); *Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd.*, 2018 WL 4963129 at *6 n.2 (C.D. Cal. June 22, 2018) ("[I]n applying a strict statutory construction, venue under § 1400(b) should be analyzed based on the facts and circumstances that exist at the time an action is filed.").

time the action is filed, as doing so better comports with the plain language of the statute."[67] The other group of cases[68] has created a limited exception for patent cases where "venue is determined based on the facts existing at the time the cause of action accrues, if suit is filed within a reasonable time thereafter."[69]

Courts following the so-called accrual rule typically examine activity preceding the filing of the complaint—often "driven by a desire to prevent defendants from avoiding suit in a given venue by retreating from the district after committing acts of infringement."[70] For example, in *Welch Sci. Co. v. Human Eng'g Inst., Inc.*, the defendant committed acts of patent infringement in the district then sold its business thirty-seven days before suit was filed.[71] The Seventh Circuit, while acknowledging the narrowness of the patent venue statute, held that venue was still proper because the plaintiff filed suit within "a reasonable time" after the cause of action accrued.[72]

But those are not the circumstances in this case. AngioDynamics lacked an established place of business in Utah before this case was filed in 2012. Bard seeks to apply the accrual standard to events that did not begin until 2016, four years later. Bard relies heavily on *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.* as an example of a court reviewing events that

---

[67] *Uni-Systems, LLC v. United State Tennis Ass'n Nat'l Tennis Ctr., Inc.*, 2020 WL 1694490 at *6 (E.D.N.Y. Apr. 7, 2020).

[68] *See, e.g.*, *Welch Sci. Co. v. Human Eng'g Inst., Inc.*, 416 F.2d 32, 35 (7th Cir. 1969) ("[U]nder the patent venue statute, venue is properly lodged in the district if the defendant had a regular and established place of business at the time the cause of action accrued and suit is filed within a reasonable time thereafter."); *San Shoe Trading Corp. v. Converse Inc.*, 649 F. Supp. 341, 345 (S.D.N.Y. 1986) (relying upon *Welch* to conclude that "venue is determined at the time the claim accrues"); *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 402 F. Supp. 3d 450, 455–56 (N.D. Ill. 2019) (agreeing with *Welch*).

[69] *Uni-Systems,* 2020 WL 1694490 at *6.

[70] *Id.*

[71] *See Welch* 416 F.2d at 33.

[72] *Id.* at 35–36.

15

occurred both before and after the filing date.[73] In *Motorola*, defendants signed a lease for a business facility on March 5, 2017, after which plaintiffs filed suit on March 14, 2017.[74] Defendants began occupying the facility on April 1, 2017 but did not begin business operations at the facility until August 2017.[75] The court found venue proper based on defendants' concession that the facility was a regular and established place of business as of August 2017, holding that "the alleged infringement continue[d] to accrue."[76]

Bard urges the court to adopt the same approach and consider the actions of AngioDynamics's two Utah-based sales representatives beginning in 2016 because Bard's patent claims represent causes of action that are still accruing. This the court declines to do. Although the *Motorola* court examined post-filing activity, the events were still tied to the filing date of the lawsuit and actions occurring just before filing. Further, unlike the events described in *Motorola*, where the activity happened within a five-month period after the case was filed, the events Bard asks the court to consider happened at least four years after the filing date.

Bard identifies no precedent exclusively considering post-filing activity when evaluating venue, and the case law Bard relies upon is readily distinguishable. Mindful of the Supreme Court's directive that venue is not a vague principle and therefore cannot be liberally construed,[77] this court will follow those courts holding that venue must be established based on

---

[73] 402 F. Supp. 3d 450.

[74] *Id.* at 455.

[75] *Id.*

[76] *Id.* at 456.

[77] *See Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction.") (internal quotation marks and citation omitted).

the facts existing at the time the case is filed. AngioDynamics had no regular and established place of business in Utah on January 11, 2012.[78] Venue in this district is improper.[79]

### IV. The Case Should Be Transferred to the District of Delaware

AngioDynamics seeks dismissal of the case based on accusations of Bard's harassment and forum shopping. Bard denies such conduct and instead requests the case be transferred to the District of Delaware. For the following reasons, the court agrees with Bard that transfer is appropriate.

#### A. Legal Standard

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." In most cases, "it is in the interest of justice to transfer to a proper forum rather than to dismiss,"[80] and any doubts should be resolved "in favor of preserving the action."[81]

The Tenth Circuit has not yet had occasion to articulate how trial courts should decide whether the interests of justice favor transfer to a proper forum instead of dismissal. The court

---

[78] Dkt. 2 (Complaint).

[79] Although the parties devote significant portions of their briefs to discussing the specific activity of AngioDynamics's Utah-based sales representatives, these facts are immaterial.

[80] *Montoya v. Fin. Fed. Credit, Inc.*, 872 F. Supp. 2d 1251, 1281 (D.N.M. 2012) (internal quotation marks and citations omitted); *see also* Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3827 (4th ed.) ("Since the presumption should be in favor of transfer, dismissal should be appropriate in unusual circumstances.").

[81] *Simpson Performance Prods. v. NecksGen, Inc.*, 2017 WL 3616764, at *8 (W.D.N.C. Aug. 23, 2017) (internal quotation marks and citations omitted).

will therefore follow the parties' lead in their briefing and apply *Mann v. Automobile Protection Corporation*[82] to determine whether transfer or dismissal is appropriate.[83]

The *Mann* court identified three factors to consider: "(1) whether the statute of limitations will bar Plaintiff from re-filing his complaint, (2) whether Plaintiff filed his complaint in this Court in bad faith or to harass Defendants, and (3) whether Plaintiff was forum shopping."[84] AngioDynamics contends dismissal is warranted because Bard is engaging in forum shopping and is using this litigation to harass a smaller competitor. Bard denies the allegations and seeks transfer to the District of Delaware. The court evaluates each of the *Mann* factors in turn.

### B. *Mann* Factors

1. Whether a Statute of Limitations Bars Plaintiffs' Claims

Although Bard may re-file this case in Delaware without offending the statute of limitations, it could suffer the loss of substantial past damages if the case is dismissed. The relevant statute, 35 U.S.C. § 286, limits patent infringement damages to the six years preceding filing of the complaint.[85] If the court dismisses this action, the six-year damages period resets,

---

[82] 777 F. Supp. 2d 1234, 1244 (D.N.M. 2011).

[83] The Tenth Circuit has not defined the phrase "in the interest of justice" under Section 1406(a), but it has identified factors district courts should evaluate when considering transfer under 28 U.S.C. § 1631—a substantially similar statute (including identical "in the interest of justice" language) governing transfer or dismissal where personal jurisdiction is lacking. *See Trujillo v. Williams*, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006) ("[F]actors warranting transfer rather than dismissal, at least under § 1631, include [1] finding that the new action would be time barred; [2] that the claims are likely to have merit; and [3] that the original action was filed in good faith rather than filed after plaintiff either realized or should have realized that the forum in which he or she filed was improper.") (internal citations and quotation marks omitted). Several district courts in this circuit have applied the *Trujillo* factors when considering whether transfer is appropriate under § 1406(a). *See, e.g.*, *Biofire Defense, LLC v. Fluidigm Corp.*, 2019 WL 7037959 (D. Utah Dec. 20, 2019); *Hanson v. Bosley and Bratch, Inc.*, 2018 WL 4491424, at *4 (D. Colo. Sept. 18, 2018). This approach is compelling, as the *Trujillo* factors seem equally applicable to Section 1406(a) and Section 1631. Here, although Bard believes the *Trujillo* factors are more apt, AngioDynamics briefed its arguments under the *Mann* factors, and Bard responded in kind. Accordingly, the court applies the *Mann* factors, especially given the significant overlap between the *Mann* and *Trujillo* factors.

[84] *Mann*, 777 F. Supp. 2d at 1244.

[85] 35 U.S.C. § 286 ("[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.").

depriving Bard of the ability to seek recovery for roughly four years of damages.[86] This would be unduly harsh, especially because the change in venue law under *TC Heartland* occurred after Bard brought suit in 2012, when venue was indisputably proper in this District. This factor weighs heavily in favor of transfer.

2. <u>Whether Plaintiffs Filed Their Complaint in Bad Faith or to Harass Defendants</u>

In an effort to prove harassment, AngioDynamics contends Bard filed in 2015 a nearly identical suit against it in the District of Delaware. AngioDynamics argues Bard lost that lawsuit and maintains that if the court were to "peek at the merits" of the underlying suit here, it would find that "the enforceability of all of Bard's port identification patents, including those asserted" in this case, are implicated by the Delaware decision.[87] Bard disagrees, maintaining "the Delaware decision is not informative because it involved different patents with different claims than those at issue here."[88]

This suit cannot be considered harassment since it was the first of the two cases filed. And even if the court were to glance at the merits, it would not be able to easily determine at this stage if the cases are identical. Such doubts about the impact of the later filed case on the case now before the court weigh "in favor of preserving the action."[89] There is also no evidence that Bard filed this action in bad faith because venue was undisputedly proper when it filed the Complaint in 2012. This factor also supports transfer.

---

[86] Dkt. 172 at 24.

[87] Dkt. 163 at 23–24.

[88] Dkt. 172 at 25.

[89] *Simpson Performance*, 2017 WL 3616764, at *8.

3. Whether Plaintiffs Were Forum Shopping

Improper forum shopping occurs where a party chooses a forum it considers to be more favorable "without *any* legal or factual basis for doing so."[90] By contrast, if federal jurisdiction "arguably" exists, a party has not engaged in improper forum shopping.[91] Here, Bard filed suit long before the Supreme Court decided *TC Heartland*, and neither party disputes that venue was proper in the District of Utah in 2012. The court cannot find that Bard lacked any legal or factual basis for choosing this forum. This factor also weighs in favor of transfer rather than dismissal.

All three *Mann* factors support transfer rather than dismissal. If the case is to be transferred, both sides agree the District of Delaware is an unquestionably proper forum. That is where AngioDynamics is incorporated, and *TC Heartland* confirmed venue is proper in the district where the alleged infringer "resides," meaning its place of incorporation.[92]

## CONCLUSION

For the reasons explained above, AngioDynamics's Renewed Motion to Dismiss or Transfer for Improper Venue is GRANTED.[93] The Clerk of Court is directed to transfer the case to the United States District Court for the District of Delaware.

SO ORDERED this 16th day of November 2020.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[90] *Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1192 (10th Cir. 2015) (internal quotation marks and citation omitted) (considering forum shopping in the context of Rule 11 sanctions).

[91] *See id.* at 1188.

[92] *See* 137 S.Ct. at 1517.

[93] Dkt. 163.